122 P.3d 1157

**STATE of Hawaiʻi, Plaintiff–Appellee,**

v.

**Jason KIM, Defendant–Appellant.**

**No. 26546.**

Intermediate Court of Appeals of Hawaiʻi.

Oct. 26, 2005.

As Amended Oct. 31, 2005.

Certiorari Denied Dec. 5, 2005.

Alan J.T. Komagome, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Michael J. Udovic, Deputy Prosecuting Attorney, County of Hawai'i, on the briefs, for Plaintiff–Appellee.

LIM, Acting C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Jason Kim (Kim) appeals the Judgment filed on March 15, 2004 in the Circuit Court of the Third Circuit (circuit court).[1]

On May 9, 2002, a grand jury indicted Kim in Cr. No. 02–1–0149 for Prohibited Acts Related to Drug Paraphernalia, in violation of Hawaii Revised Statutes (HRS) § 329–43.5(a) (1993).[2] Kim was served with the arrest warrant on January 8, 2003. On March 3, 2003, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 48, Kim moved to dismiss the charge because there had been a pretrial delay of more than six months and the State had not used due diligence to serve him. On March 31, 2003, the circuit court filed an "Order Granting, in Part, Defendant's Motion to Dismiss for Violation of Rule 48, HRPP," dismissing the charge without prejudice. Kim timely appealed the order. On August 12, 2003, the Hawai'i Supreme Court dismissed Kim's appeal, stating that the court lacked jurisdiction because the appeal was not authorized by HRS §§ 641–11 (1993) or 641–17 (1993) (appeal allowed only from a judgment of conviction or a certified interlocutory order).

On April 9, 2003, Kim was re-indicted in Cr. No. 03–1–0092 for the same offense.[3] On

---

1. The Honorable Terence T. Yoshioka presided.

2. Hawaii Revised Statutes (HRS) § 329–43.5(a) (1993) provides:

   **§ 329–43.5 Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

3. The April 9, 2003 Indictment read as follows:

   On or about the 21st day of February, 2001, in the County and State of Hawai'i, JASON KIM used and/or possessed with intent to use, drug paraphernalia, a pipe and/or plastic bags, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, and/or other-

January 6, 2004, pursuant to HRPP Rule 11(a)(2),[4] Kim entered a conditional guilty plea, in which he reserved the right to seek review of the March 31, 2003 "Order Granting, in Part, Defendant's Motion to Dismiss for Violation of Rule 48, HRPP." The circuit court approved the plea and sentenced Kim to five years of probation. Kim timely appealed.

On appeal, Kim argues that the circuit court erred in failing to grant with prejudice his "Motion to Dismiss For Violation of Rule 48, HRPP" (Motion to Dismiss).[5] We disagree and affirm.

## I.

Hawai'i Rules of Penal Procedure Rule 48 provides, in relevant part:

**Rule 48. DISMISSAL.**

. . . .

(b) **By court.** Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:

(1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner[.]

In the Declaration of Counsel attached to the Motion to Dismiss, Kim's counsel stated that the State had made only one attempt to contact Kim regarding the warrant for Kim's arrest and that was a telephone attempt on or about June 24, 2002. Kim's counsel further stated that "[f]or the next six and a half months no efforts were made to serve [Kim] until he was served on or about January 8, 2003."

In its memorandum in opposition to the Motion to Dismiss, the State conceded that it had violated HRPP Rule 48:

1. *Length of Delay*

The Defendant became "accused" on May 8, 2002, when he was indicted by the Grand Jury. Trial is set for April 14, 2003. The time from indictment to the scheduled trial is 341 days. The State does not dispute the calculations in Defendant's Exhibits A and B. The days over the Rule 48 period is 65 days. This "presumptively prejudicial" delay, while not extreme, does require further inquiry.

2. *Reason for Delay*

The warrant for the Defendant's arrest went unserved from May 8, 2002 to April 14, 2003[sic]. Up until one attempt [sic] was made by the State to effectuate service. The State cannot offer any reason for this failure to have Defendant served. However, this should not be seen as a deliberate attempt by the State to violate Defendant's rights or prejudice him.

. . . .

B. *Hawai'i Rules of Penal Procedure Rule 48*

Hawai'i Rules of Penal Procedure, Rule 48 requires the Court to dismiss criminal charges if the trial is not commenced within six months from the date of the filing of the charge. In this case, the Grand Jury returned the indictment on May 8, 2002. In order to comply with Rule 48, the State was required to have been [sic] brought the Defendant to trial before November 4, 2002. However, Defendant was served on January 8, 2003. The Rule 48 time has run. Therefore, and [sic] the only question

---

wise introduce into the human body a controlled substance, in violation of Chapter 329 of the Hawaii Revised Statutes, thereby committing the offense of Prohibited Acts Related to Drug Paraphernalia, in violation of Section 329–43.5(a), Hawaii Revised Statutes[.]

4. Hawai'i Rules of Penal Procedure (HRPP) Rule 11(a)(2) provides:

**Rule 11. PLEAS.**
(a) **Alternatives.**
. . . .

(2) CONDITIONAL PLEAS. With the approval of the court and the consent of the State, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specific pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

5. This court has jurisdiction pursuant to *State v. Pulse*, 83 Hawai'i 229, 236, 925 P.2d 797, 804 (1996); *see also Parr v. United States*, 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956).

for the Court is whether the Rule 48 dismissal would be with or without prejudice.

In its Order Granting, In Part, Defendant's Motion to Dismiss for Violation of Rule 48, HRPP, the circuit court made the following Conclusions of Law:

1. There is a violation of HRPP, Rule 48;

2. The offense charged is possession of drug paraphernalia, which is a class "C" felony. This is a serious offense, although not as serious as other class "C" offenses;

3. There is no justification for the violation of the Rule 48 period;

4. The impact of reprosecution on the administration of justice does not warrant dismissal with prejudice, considering that the Rule 48 period was exceeded by 65 days, which is minimal, and Defendant has not shown any particular prejudice caused by the delay[.]

Kim argues that Conclusions of Law numbers 2 and 4 are in error.

## II.

■ "A trial court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion." *State v. Mendonca,* 68 Haw. 280, 283, 711 P.2d 731, 734 (1985). "Generally, to constitute an abuse, it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Crisostomo,* 94 Hawai'i 282, 287, 12 P.3d 873, 878 (2000) (internal quotation marks, citations, and brackets omitted).

## III.

Kim argues that the circuit court erred in failing to grant his Motion to Dismiss with prejudice rather than without prejudice. In support of this argument, Kim cites three factors the circuit court must consider when determining whether to grant a motion to dismiss for violation of HRPP Rule 48, as articulated by the Hawai'i Supreme Court in *State v. Estencion,* 63 Haw. 264, 625 P.2d 1040 (1981):(1) the seriousness of the offense, (2) the facts and circumstances of the case that led to the dismissal, and (3) the impact of a reprosecution on the administration of HRPP Rule 48 and on the administration of justice. *Estencion,* 63 Haw. at 269, 625 P.2d

at 1044. These factors were adopted from the language of the Federal Speedy Trial Act, 18 U.S.C. § 3162, (the Act) as a requirement to Rule 48(b). *Estencion,* 63 Haw. at 269, 625 P.2d at 1044.

### A. The Seriousness of the Offense.

Kim argues that the charge of Prohibited Acts Related to Drug Paraphernalia, a class C felony, is not a serious offense in this case because there were no exacerbating circumstances, such as violence, in the underlying criminal matter. In support of this argument, Kim cites to *United States v. Caparella,* 716 F.2d 976 (2d Cir.1983).

In *Caparella,* the defendant had been charged with mail theft and opening mail without authority. *Id.* at 977. The government moved ex parte to dismiss the complaint against Caparella because it had failed to timely file an indictment/ information against Caparella. *Id.* The court granted the government's motion. *Id.* The government re-filed one of the charges, and Caparella moved to dismiss. *Id.* During the hearing on the motion, the magistrate stated that when he granted the dismissal, he had not considered the factors under 18 U.S.C. § 3162(a)(1). *Caparella,* 716 F.2d at 977. However, the magistrate denied the motion, holding that the earlier dismissal had been without prejudice. *Id.* After a trial, the court found Caparella guilty; Caparella appealed. *Id.* at 978. The United States District Court for the Eastern District of New York remanded the case to the magistrate to redetermine the dismissal issue using the factors set forth in § 3162(a)(1). *Caparella,* 716 F.2d at 978. At the remand hearing, the magistrate stated that had he only considered the second factor (the government's negligence), he would have dismissed with prejudice, but the other three [sic] factors tipped the scales in favor of dismissal without prejudice. *Id.* The magistrate also stated that Caparella's conduct was of a serious nature because it involved a breach of public trust. *Id.* The United States District Court for the Eastern District of New York adopted the magistrate's findings, and Caparella appealed to the United States Court of Appeals for the Second Circuit. *Id.*

The Second Circuit held that the dismissal should have been with prejudice. *Id.* at 977. In its discussion, the Second Circuit stated that as to the first factor in § 3162(a)(1), it did not consider Caparella's conduct a "serious" crime, absent exacerbating circumstances such as violence. *Caparella,* 716 F.2d at 980.

In *United States v. Simmons,* 786 F.2d 479 (2d Cir.1986), Simmons was charged in three counts of a four-count indictment with conspiracy to distribute heroin, distribution of heroin, and possession of heroin with intent to distribute. *Id.* at 480. The Second Circuit distinguished the crime in *Simmons* from that in *Caparella* without determining whether Simmons' crime involved violence:

> [E]ven though a relatively small quantity of heroin was involved here, we consider the narcotics offense to which Simmons pled guilty—possession of six glassine envelopes with intent to distribute—"serious" within the meaning of the statute. Heroin is a "hard" drug; by imposing a sentence of five years, followed by three years special parole, the district court certainly indicated that it viewed appellant's crime as a serious one. Because the court in *Caparella* found that the offense involved there was not serious, that case is distinguishable in this important respect. We conclude that the first factor weighs heavily in favor of dismissal without prejudice.

*Simmons,* 786 F.2d at 485 (citations omitted).

The same year *Simmons* was decided, the United States District Court for the District of Vermont in *United States v. Buxton,* 630 F.Supp. 298 (D.Vt.1986), did not require that violence be a part of the crime charged in order for that crime to be considered "serious." *Id.* at 299–300. The court stated that "[Buxton] was indicted on 21 counts, including one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and two counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). These narcotic offenses are serious for the purposes of the Act." *Buxton,* 630 F.Supp. at 299.

The United States District Court for the District of Massachusetts distinguished the crime involved in *United States v. Medugno,* 233 F.Supp.2d 184 (D.Mass.2002), from *Caparella* on the basis of the *type* of crime committed. Medugno was charged with

" 'corruptly' tampering with witnesses with the intent 'to hinder and prevent communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense' " and with "intimidating and corruptly persuading another person, with the goal of influencing and preventing the person from testifying before a grand jury." *Medugno,* 233 F.Supp.2d 184. In *Medugno,* the court decided that

> [u]nlike the defendants in *Caparella* and [*United States v.*] *Smith,* [225 F.Supp.2d 1305 (D.Utah 2002)], Medugno is not charged with a crime against property. He is charged with obstructing justice, a crime that strikes at the very heart of our justice system. Justice cannot be replaced or repaid like a piece of stolen property. For these reasons, therefore, the first factor weighs in favor of dismissal without prejudice.

*Medugno,* 233 F.Supp.2d at 186.

■ Even where the crime was similar to the one committed by Caparella, as in *United States v. Morety,* 702 F.Supp. 957 (E.D.N.Y. 1988), the United States District Court for the Eastern District of New York declined to apply the *Caparella* standard. *Morety,* 702 F.Supp. at 960–61. The defendant was charged with conspiring to possess checks stolen from the mails and with nine counts of the substantive crime of possessing checks stolen from the mails. *Id.* at 960. The court found that

> [t]he Court of Appeals has observed that theft from the mails, 18 U.S.C. § 1709, was viewed by Congress as "the lowest order of felony." *United States v. Caparella,* 716 F.2d 976, 980 (2d Cir.1983). The undersigned nevertheless views, and has always viewed, possession of checks stolen from the mails as a most serious breach of the public trust and respectfully suggests that a *felony carrying a five year jail term may not qualify as the "lowest order" of felony.*

*Morety,* 702 F.Supp. at 960–61 (emphasis added). Similarly, although Kim contends that the crime of Prohibited Acts Related to Drug Paraphernalia is of the lowest order of felony offenses, the circuit court nevertheless determined it was serious. As in *Morety,*

conviction of the felony carries a five-year term of imprisonment.

Clearly, despite the Second Circuit's requirement in *Caparella* that absent exacerbating circumstances such as violence a crime is not to be considered serious, many courts have declined to apply that standard.[6] In the instant case, the circuit court "reasonably considered this factor" and with the other factors set forth in *Estencion* "properly balanced it." *United States v. Pierce*, 17 F.3d 146, 149 (6th Cir.1994).

### B. The Facts and Circumstances of the Case Leading to the Dismissal.

■ Kim argues that given that the State in the instant case did not provide a justification for its delay in serving him, the circuit court should have dismissed with prejudice. He notes that the sole cause of the delay was the State's negligence and inaction. The circuit court agreed that the State proffered no justification for violating the Rule 48 period.

Kim cites *United States v. Russo*, 741 F.2d 1264 (11th Cir.1984), in support of his argument. In *Russo*, both parties agreed that the offense was serious. *Id.* at 1267. Additionally, the court deemed the third factor to be "neutral" because it found that Russo's and the government's interests balanced out each other. *Id.* Russo's interest was in having his case dismissed with prejudice because dismissal without prejudice would open the way to retrial after an even longer delay. *Id.* The government's interest was to reprosecute so as to further the public's interest in bringing such offenders to trial. *Id.* Hence, the court stated that "[t]he near neutrality of the first and third factors requires a closer look at the facts and circumstances surrounding the delay [the second factor]. If the excess of includable time was justified, dismissal without prejudice is proper; otherwise, it is not." *Id.* Because the only reason the government in *Russo* provided for the delay was simple negligence due to not fully understanding new law, the court reversed the lower court's judgment and remanded

the case for vacation of the conviction and dismissal of the indictment with prejudice. *Id.* at 1267–68.

However, in the instant case the first and third factors are not "neutral." The parties do not agree that the offense was "serious." The circuit court did not determine that the parties' interests balanced out each other; it found, ostensibly, that the State's interest outweighed Kim's. Despite the fact that the State's delay was unjustified, it does not in and of itself tip the balance toward dismissal with prejudice.

### C. The Impact of a Reprosecution on the Administration of HRPP Rule 48 and on the Administration of Justice.

The United States Court of Appeals for the Eleventh Circuit in *United States v. Williams*, 314 F.3d 552 (11th Cir.2002), provided guidance in construing the third factor of the *Estencion* three-part balancing test:

> In applying the third statutory factor, there is almost always some tension between the administration of the Act and the administration of justice. Indeed, defendants can always argue that the minimal sanction of dismissal without prejudice takes the teeth out of the Act's requirements. In response, the government can always argue that reprosecution furthers the public's interest in bringing criminals to trial. Even though these two standard arguments neutralize each other, this third factor is not always neutral. The third factor not only allows courts to review the seriousness of the criminal charges and the reason for the delayed indictment but also provides authority for considering such aggravating and mitigating factors as the length of the delay and the prejudice to the defendant.

*Williams*, 314 F.3d at 559–60 (internal quotation marks, citations, and brackets omitted).

---

6. *United States v. Jervey*, 630 F.Supp. 695 (S.D.N.Y.1986), is to the contrary. In *Jervey*, the United States District Court for the Southern District of New York decided: "Using the word in its everyday sense, the theft of large sums of money from the mails is always a serious offense, but so are most federal crimes. However, the theft charged in Count One involved no instance of violence. Absent such an 'exacerbating circumstance' we should not regard this offense as a 'serious' crime as that word is used within the meaning of the Act." *Id.* at 698.

Kim contends the circuit court abused its discretion by giving undue consideration to the lack of prejudice to him. Prejudice to a defendant, he argues, is not a required factor in deciding whether to dismiss with or without prejudice. He argues the circuit court was wrong when it concluded that a sixty-five day delay was only "minimal" and the impact of reprosecution of justice did not warrant a dismissal with prejudice. *Any* delay, he contends, negatively impacts the administration of HRPP Rule 48 and that dismissal without prejudice only opens the way for a new prosecution after an even *longer* delay. In support of this contention, Kim cites *Caparella* and *Russo* for the proposition that any delay in bringing a case to trial negatively impacts the defendant's and society's interest in a prompt criminal trial.

In *Caparella,* the magistrate dismissed Caparella's case without prejudice, believing that "the administration of the Act would not be impaired by reprosecution since there was no serious delay" in the reprosecution and the defendant was "brought to trial within the total number of days contemplated under the Act." *Caparella,* 716 F.2d at 978. In reversing the lower court's dismissal without prejudice, the Second Circuit held that any violation of any of the Act's time limitations negatively impacted the administration of the Act. *Id.* at 981.

In *Russo,* because there was a delay from the time of Russo's indictment for several federal drug offenses to the time of trial that went beyond the time proscribed by the Act, the lower court dismissed the case without prejudice. *Russo,* 741 F.2d at 1266. On appeal, the Eleventh Circuit found that the defendant's case should have been dismissed with prejudice. *Id.* at 1268.[7]

In *United States v. Vasquez–Escobar,* 30 F.Supp.2d 1364 (M.D.Fl.1998), the United States District Court found that the postponement in a case, combined with the delay

being wholly the fault of and without justification from the government, favored dismissal with prejudice. *Id.* at 1368–69. However, in that case, Vasquez–Escobar had been held by the government for nearly five months. *Id.* at 1368.

Conversely, in *Williams,* the Eleventh Circuit, in applying the third statutory factor, concluded that "the sixty-eight-day [sic] violation of the Speedy Trial Act was not so substantial per se as to require dismissing the charges in the complaint with prejudice." *Williams,* 314 F.3d at 560. The court stated that " 'where the crime charged is serious, the court should dismiss [with prejudice] only for a correspondingly severe delay.' *Russo,* 741 F.2d at 1267." *Williams,* 314 F.3d at 561 (bracketed material in original).

▇ Given that the sixty-five day delay in serving Kim in the instant case is less than the sixty-eight day delay in *Williams,* and since the circuit court did not err when it determined the charge against Kim to be "serious," the circuit court did not clearly abuse its discretion in determining that the delay was minimal.

▇ This court found in *State v. Ferraro,* 8 Haw.App. 284, 800 P.2d 623 (1990), that "[p]rejudice in a speedy trial claim is evaluated in the light of the interests protected by the right. Those interests are: [1] to prevent oppressive pre-trial incarceration; [2] to minimize anxiety and concern of the accused; and [3] to limit the possibility that the defense will be impaired." *Id.* at 300, 800 P.2d at 632 (internal quotation marks and citation omitted; bracketed numbers in original). "A mere assertion that one had been upset or concerned about a pending criminal prosecution is not sufficient to establish prejudicial anxiety." *Id.* (internal quotation marks, citation, and brackets omitted).

In the instant case, Kim simply argues that "*any* delay negatively impacts the ad-

---

7. In his opening brief, Kim also erroneously states that in *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984), the United States Court of Appeals for the Eleventh Circuit noted that "a dismissal without prejudice in such a case frustrated the Act's mandate of swift prosecution since it would allow for a retrial after an even longer delay." (Emphasis omitted.) The court was evaluating the impact of reprosecution on the Act and justice in general and was comparing the public's interest and swift prosecution. What the Eleventh Circuit actually said was that "[c]onversely, dismissal without prejudice *can* be viewed as frustrating the Act's mandate of swift prosecution since it would open the way to retrial after an even longer delay." *Id.* (emphasis added). However, the Eleventh Circuit did not adopt that view in reversing the lower court's holding.

ministration" of HRPP Rule 48 and a "dismissal without prejudice only opens the way for a new prosecution after an even *longer* delay." (Emphasis in original.) However, Kim does not explain whether he was personally prejudiced. Therefore, the circuit court did not abuse its discretion in holding that Kim did not show any particular prejudice caused by the delay.

Kim further contends the circuit court incorrectly placed the burden on the defendant to show prejudice caused by the delay. In support of this contention, he cites *State v. Coyaso*, 73 Haw. 352, 833 P.2d 66 (1992).

In *Coyaso*, the Hawai'i Supreme Court stated that a "dismissal with prejudice may be warranted without a specific finding that the defendant has been prejudiced by the delay." *Id.* at 356, 833 P.2d at 68. The Hawai'i Supreme Court did not say that when a finding of prejudice is given its proper weight within the analytical framework put forth in *Estencion,* it would be improper to give the defendant the burden of showing prejudice. The court noted that it agreed with the United States Supreme Court [8] that "prejudice to the defendant may be a relevant consideration in the trial court's decision to dismiss with or without prejudice." *Coyaso,* 73 Haw. at 358, 833 P.2d at 69.

In the instant case, the circuit court properly considered prejudice to Kim in its determination of whether to dismiss with or without prejudice. To say that a specific finding is not mandatory is not to say that it is insignificant. The circuit court considered particular prejudice on the part of Kim among other factors in dismissing Kim's indictment without prejudice.

## IV.

 In dismissing without prejudice the charge against Kim, the circuit court considered and weighed the seriousness of the offense, the facts and circumstances that led to the dismissal, and the impact of a reprosecution on the administration of HRPP Rule 48 and on the administration of justice. The circuit court did not abuse its discretion in dismissing the charge without prejudice. Therefore, the Judgment filed on March 15, 2004 in the Circuit Court of the Third Circuit is affirmed.

---

8. *United States v. Taylor,* 487 U.S. 326, 341, 108 S.Ct. 2413, 2422, 101 L.Ed.2d 297 (1988).